UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| NATIONWIDE TOWER CO. | ) | CASE NO. 05-40689 |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| ROBERTA S. DUNLAP, TRUSTEE, for | ) | |
| NATIONWIDE TOWER COMPANY | ) | AP NO. 07-4022 |
| Plaintiff | ) | |
| vs. | ) | |
| | ) | |
| INDEPENDENCE BANK | ) | |
| Defendant | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

This adversary proceeding came before the Court for trial on April 14, 2008. Both the Chapter 7 Trustee, Roberta S. Dunlap (the "Trustee") and a representative of Independence Bank (the "Bank") appeared and were represented by counsel. The Court considered the testimony and exhibits presented at trial on the on the Complaint to Avoid Transfers Pursuant To 11 U.S.C. § 547 and to Recover Property Transferred Pursuant to 11 U.S.C. § 550 filed by Trustee against the Bank. The Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

**FINDINGS OF FACT**

1.      On April 4, 2005, Nationwide Tower Company (the "Debtor") filed this Chapter 7 case (Case No. 05-40689) in the United States Bankruptcy Court for the Western District of Kentucky.

2.      On April 4, 2005, Roberta Dunlap was appointed by the Office of the United States Trustee to serve as the Chapter 7 Trustee in the Debtor's case. She continues to serve in that

capacity.

3.      On April 3, 2007, the Trustee filed this action against the Defendant alleging that Debtor made two transfers to the Defendant in the total amount of $80,683.20. The Trustee alleged these transfers constituted preferences avoidable pursuant to 11 U.S.C. § 547. The debtor made the first transfer on January 10, 2005, in the amount of $40,233.03 (Check No. 8229) and the second transfer on February 25, 2005, in the amount of $40,450.17 (Check No. 8272).

4.      On May 3, 2007, the Bank filed its answer denying that the transfers constituted a preference and further alleging that the transfers were made from the Bank's own collateral, and thus not avoidable under 11 U.S.C. § 547.

5.      On November 23, 2007, the Trustee filed her trial brief wherein she repeated her allegations from the complaint concerning the $80,683.20 in allegedly preferential transfers. She also included two new transfers ($93.87 on February 28, 2005 and $16,464.82 on March 31, 2005) which she also alleged were preferential transfers.

6.      In a pre-trial conference, the Court concluded that based upon the pleadings and comments of counsel, that the Trustee had made a *prima facie* case for the elements under § 547(b)(1), (2), (3), and (4). The only issue still to be determined is whether the Bank received more from these transfers than it would have received in a Chapter 7 liquidation as set forth in § 547(b)(5). To decide this issue, the Court had to consider the Bank's contention that the source of the transfers came from its own collateral.

7.      The Bank called Gregory S. Mullican ("Mullican") to testify. Mullican is the chief lending officer of the Bank and served as the loan officer on the Nationwide Tower Company

2

account.

8.      The Bank and the debtor entered into a three million dollar ($3,000,000.00) Loan Agreement on January 31, 2003 (Bank's Exhibit 9).  As of the date of the trial, the outstanding balance on this debt exceeded two million dollars.

9.      The Commercial Security Agreement (Bank's Exhibit 9), also dated January 31, 2003, identified the collateral for the Loan Agreement.  The collateral included: 1) Accounts and Other Rights to Payment; 2) Inventory; 3) Equipment; 4) Instruments and Chattel Paper; 5) General Intangibles; 6) Documents; 7) Farm Products and Supplies; 8) Government Payments and Programs; 9) Investment Property; and 10) <u>Deposit Accounts</u> (emphasis added).

10.     The Bank's Exhibit 4 consists of 3 months worth of Deposit Account Statements that the debtor had with the Bank (Acct. No. 0-200853-0).  The first Account Statement represents the period of December 31, 2004 to January 31, 2005.  The second Account Statement represents the period of January 31, 2005 to February 28, 2005.  The third Account Statement represents the period of February 28, 2005 to March 21, 2005.  It was during these time periods that the Trustee alleged the preferential transfers took place.

11.     The first Account Statement shows that on January 11, 2005 the debtor wrote a check on this account (Check No. 8229) for $40,233.03 to the Bank.  Mullican testified that this payment represented the debtor's monthly payment on the loan account.

12.     The second Account Statement shows that on February 25, 2005, the debtor wrote another check (Check No. 8272) in the amount of $40,450.17 to the Bank. Mullican testified this payment was also a regular monthly payment.

3

13.    The second Account Statement also shows that on February 18, 2005, a check (Check No. 8273) in the amount of $93.87 to the Bank.  Mullican testified he was unsure of the purpose of this payment.

14.    The third Account Statement shows that on March 31, 2005, the Bank closed the Deposit Account and applied / set off the remaining $16,464.82 in the account to the debtor's delinquent loan account.

15.    On cross examination, Mullican testified that the loan balance was reduced by $55,449.25 during the 90 days preceding the filing of the bankruptcy.

16.    Mullican also testified that the Bank was undersecured, in that the value of the collateral was insufficient to pay off the outstanding debt.

## CONCLUSIONS OF LAW

One of the fundamental tenets of the law of bankruptcy is the equality of distribution of a debtor's usually limited assets. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 177-78 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6138 (noting the "prime bankruptcy policy of equality of distribution among creditors").  In furtherance of that policy, § 547 authorizes the post petition recovery of a debtor's pre-petition transfers that are deemed to be preferential in nature.  Section 547(b) provides that:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made-
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of

the petition, if such creditor at the time was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if-

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The burden of proving each of the above elements falls on the Trustee. 11 U.S.C. § 547(g). "Unless each and every one of these elements is proven, a transfer is not avoidable as a preference under 11 U.S.C. § 547(b)." Waslow v. The Interpublic Group of Cos. (In re M Group, Inc.), 308 B.R. 697, 700 (Bankr. D. Del. 2004) (citations omitted). Furthermore, with respect to the insolvency element, 11 U.S.C. § 547(f) creates a presumption that debtors have been insolvent on and during the 90 days immediately preceding the date of the filing of the bankruptcy petition.

As previously stated, there really is no question that the first four elements of the Trustee's § 547(b) action were met. There is no dispute that there were transfers of an interest of the debtor in property. The transfers went to the Bank, a creditor of the debtor, on account of an antecedent debt. The transfers were made while the debtor was insolvent, and within 90 days of the filing of the bankruptcy petition. The only question to be decided is whether these transfers enabled the Bank to receive more than it would have received: 1) if the case were a case under chapter 7; 2) the transfer had not been made; and 3) the creditor received payment on its debt to the extent provided by the provisions of this title. 11 U.S.C. § 547(b)(5). In other words, did the Bank receive a better return than it would have received if the transfers not been made, and its payment came under the distribution scheme of the Bankruptcy Code?

It is generally settled law that a creditor does not receive a greater return from a transfer if

the source of the transfer is the creditor's own collateral.  Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, L P), 171 F.3d 249, 254 (5th Cir. 1999) ("Similarly, an undersecured creditor who receives prepetition payments does not receive a greater percentage recovery when the source of the payments is the creditor's own collateral."); In re El Paso Refinery, L.P., 178 B.R. 426 (Bank. W.D. Tex. 1995),rev'd on other grounds 171 F.3d 249 (5th Cir. 1999); In re Intercontinental Polymers, Inc., 359 B.R. 868 (Bankr. E.D. Tenn. 2005) (debtor-in-possession was entitled to judgment when proof established the creditor was paid with funds other than proceeds from its own collateral).  A creditor who recovers its own collateral does not receive more than it would have received had the funds been retained by the debtor prior to filing bankruptcy.  Upon the filing of the bankruptcy, after a review by the trustee, the selfsame collateral would be returned to that creditor by the trustee as part of the chapter 7 administration. 11 U.S.C. § 725; see Waslow v. MNC Commercial Corp. (In re M. Paolella & Sons, Inc.), 161 B.R. 107, 124 (E.D. Penn. 1993) (no preferential transfer if the creditor merely receives a pre-petition transfer of its collateral or proceeds therefrom).

Here, the Bank offered uncontroverted evidence that the debtor and the Bank entered into a security agreement granting the Bank a security interest in deposit accounts.  KRS 355.9-102(1)(ac) defines "deposit account" as "a demand, time, savings, passbook, or similar account maintained with a bank."  There can be no question that the deposit account from which the Bank was paid qualifies as a deposit account as defined in KRS 355.9-102(1)(ac).  There can also be no question that the Bank properly perfected its security interest in this collateral by exercising control over the collateral.  KRS 355.9-314(1) and KRS 355.9-104(1)(a).  In other words, the debtor paid the Bank with its own collateral from a properly perfected security agreement.  As such, the Bank did not receive more than it would have had the transfer had not been made and the Bank recovered

6

just under the Chapter 7 liquidation.

In her post trial brief, the Trustee does not challenge the law that payments from a creditor's own collateral cannot be preferential. Instead, she goes to great pains to argue that the Court should not adhere to Revised Article 9 of the Uniform Commercial Code ("UCC") but rather should apply some principles from 11 U.S.C. § 547 to determine if the Bank was secured and properly perfected. The Trustee cannot, and indeed does not, argue that no security agreement existed between the debtor and the Bank, which granted a security interest to the Bank in all the debtor's accounts. Nor does she argue that the security agreement was invalid or otherwise defective. Finally, no argument is presented that the Bank's security interest was not properly perfected. Considering these facts, the Court fails to see how the Trustee can seriously argue that the Bank was not paid with its own collateral. The Trustee would have the Court set aside the principles of the UCC, and instead create some nebulous federal common law with respect to security interests. The Court declines such an invitation.

Because it is clear that the Bank possessed a security interest in the deposit account from which it was paid and that the security interest was properly perfected, the Court concludes that the Bank did not receive more than it would have under a Chapter 7 liquidation proceeding. Accordingly, the Trustee failed to meet her burden of proof as required in § 547(g), and the Court will enter a judgment in favor of the Bank and against the Trustee.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:                                          )
NATIONWIDE TOWER CO.                            )          CASE NO. 05-40689
                          Debtor                )
_____         )
                                                )
ROBERTA S. DUNLAP, TRUSTEE, for                 )
NATIONWIDE TOWER COMPANY                         )          AP NO. 07-4022
                          Plaintiff             )
vs.                                             )
                                                )
INDEPENDENCE BANK                               )
                          Defendant             )
_____         )

## **JUDGMENT**

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the complaint against the Defendant, Independence Bank, is **DISMISSED**.